

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 13, 2022

**BY ECF**

The Honorable Valerie E. Caproni
United States District Court Judge
Southern District of New York
40 Foley Square
New York, New York 10007

  **Re:** *United States v. Christopher Douglas-Roberts*, S3 21 Cr. 603 (VEC)

Dear Judge Caproni:

  The defendant in this case, Christopher Douglas-Roberts a/k/a "Supreme Bey," is scheduled to be sentenced on October 27, 2022 at 10:30 a.m., having pled guilty to conspiracy to commit health care fraud, in violation of Title 18, United States Code, Sections 1349 and 1347. The Government submits this letter in advance of sentencing. For the reasons explained below, the Government believes a sentence toward the bottom of the Guidelines Range is appropriate in this case.

  **I.** **Background**

    **A.  Offense Conduct**

  The defendant, a former professional basketball player in the National Basketball Association, took part in a scheme to commit fraud against the NBA Players' Health and Welfare Benefit Plan (the "Plan").

  Among other benefits, the Plan provides current and retired NBA players, who satisfy certain eligibility criteria, with reimbursements for qualifying medical expenses. Players are eligible to draw on a particular amount of funds, which is based on the number of seasons in which the individual played in the NBA. NBA teams fund the Plan on a regular basis. Funds available also increase and decrease based on a pro rata distribution of the Plan's investment gains or losses. In addition to players eligible to participate, certain spouses, children, and other dependents ("Participants") may also submit claims to the Plan.

  Participants can submit claims to a third-party administrative manager. Participants can also use a debit card that is directly funded by the Plan. Where funds are dispersed and claims are approved, Participant medical expenses are paid for directly or expenses are reimbursed.

Hon. Valerie E. Caproni
October 13, 2022
Page 2 of 5

Co-conspirator Terrence Williams was a leader in the scheme, obtaining fraudulent invoices from medical professionals, and others, and allowing others to defraud the Plan. Williams collected kickbacks from his co-conspirators for his coordinating role in the fraud scheme. (PSR ¶¶ 103, 104.)

Williams worked with various doctors and medical professional to obtain these fraudulent invoices, including co-conspirators Dr. Pat Khaziran, Dr. Aamir Wahab, and Dr. William Washington. Khaziran is a California-based chiropractor; Wahab is a California-based dentist; and Washington is a Washington State-based physician who operates a wellness practice. Williams also relied on co-conspirators to create fraudulent invoices that were designed to appear as though they were created by Khaziran's chiropractic office.

From in or about 2016 through in or about June 2019, Williams, others, and Khaziran worked together to create false and fraudulent invoices for medical services. The Plan paid out more than $1.6 million in fraudulent Khaziran claims. Khaziran collected approximately one third of the fraudulent Plan proceeds for his participation in the fraud scheme. Williams also directed two other co-conspirators, who were not affiliated with Khaziran, to create fraudulent invoices that appeared to be invoices from Khaziran's clinics. $2.6 million worth of those fraudulent invoices were submitted to the Plan.

From in or about 2017 through in or about 2021, Williams worked with Aamir Wahab to procure false and fraudulent invoices for dental services. Some co-defendants were not even present in the state of California, where Wahab is based, when these dental services were supposedly rendered. At least approximately $1.1 million in fraudulent invoices were submitted to the Plan purporting to be for services rendered by Wahab. Wahab collected kickbacks for his role in the conspiracy. Co-defendant Sophia Chavez worked for Wahab and assisted Wahab in creating false medical records for the purpose of defrauding the Plan.

Between in or about March 2019 and in or about February 2020, Washington, Williams, and others worked together to create fraudulent invoices for healthcare services. Washington created approximately more than $365,000 fraudulent invoices for use in the scheme.

As relevant to Douglas-Roberts, on December 21, 2018, Douglas-Roberts submitted a signed reimbursement claim form to the Plan's third-party administrator seeking $118,000 for services purportedly provided to Douglas-Roberts at Khaziran's clinic on dates between on or about April 1, 2018 and August 1, 2018. That reimbursement claim was signed by Douglas-Roberts and above the signature is a section which required Douglas-Roberts to "certify that the above information [concerning the reimbursement request] is correct" and "I understand that fraud is a felony in most states punishable by fines and/or imprisonment. Providing misleading or false information constitutes fraud." Despite this warning the invoices attached to the reimbursement claim were fraudulent. Those invoices were created at Williams's direction by a coconspirator who was not affiliated with Khaziran. Williams emailed those fraudulent invoices to Douglas-Roberts shortly before Douglas-Roberts submitted them to the Plan. Douglas-Roberts never received the services described in the invoices.

In January 2019, Roberts was paid a total of $117,123.24 of Plan funds. That represented the maximum amount of reimbursement to which the defendant was then entitled for legitimate medical reimbursements under the terms of the Plan.

### B. Procedural History

On October 7, 2021, the initial indictment was unsealed. On October 18, 2021, Douglas-Roberts, who at the time primarily lived in Mexico, self-surrendered in the Southern District of New York. On July 6, 2022, Douglas-Roberts pleaded guilty to a lesser-included offense of Count One of the then-operative Superseding Indictment S3 21 Cr. 603, conspiracy to commit health care fraud. Pursuant to the parties' plea agreement, the parties stipulated that Robinson's offense level is 12 and his Criminal History Category is I, resulting in a Guidelines Range of 10 to 16 months' imprisonment. The Probation Office calculates the same Guidelines Range. (PSR at 41.)

## II.  Discussion

### 1. Applicable Law

Following *United States v. Booker,* 543 U.S. 220 (2005) and *United States v. Crosby,* 397 F.3d 103 (2d Cir. 2005), the Guidelines continue to provide a critical touchstone. Indeed, while the Guidelines are no longer mandatory, they remain in place, and district courts must "consult" them and "take them into account" when sentencing. *Booker,* 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States,* 552 U.S. 38, 49 (2007).

After calculating the Guidelines range, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)-(7). *See Gall,* 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;

Hon. Valerie E. Caproni
October 13, 2022
Page 4 of 5

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### 2. A Sentence Toward the Bottom of the Guidelines Range Is Sufficient and Not Greater Than Necessary

A sentence toward the bottom of the Guidelines Range is appropriate but not greater than necessary to comply with the purposes of sentencing. The factors most relevant to imposing sentence include the seriousness of the defendant's offense, the need to promote respect for the law, and the need to afford adequate deterrence to criminal conduct.

*First*, the conduct at issue is indisputably serious. The defendant took part in a broad conspiracy to defraud the Plan, a benefit extended to NBA players and their families. The defendant stole money from the Plan that was intended to support legitimate health needs of Participants.

His crime was undoubtedly one of deceit. The defendant knowingly submitted false and fraudulent invoices to the Plan in order to steal money to which he was not entitled.

The defendant's conduct also risked harming victim Plan participants. The Plan benefits were fought for and obtained over the course of negotiations between the league and the NBA Players' Association. The defendant's fraud undermines trust in the Plan and the provision of Plan benefits and could chill the provision of benefits and the construction of benefit programs. In addition, the defendant's conduct involved improper use of the tax treatment of Plan funds, which could risk the tax-free treatment applied to Plan reimbursements for all Plan Participants, including for legitimate claims.

*Second*, the Court should consider the need to promote respect for the law.

*Finally*, general deterrence is an important consideration in sentencing the defendant, as well as his co-conspirators. The defendant's conduct harmed the Plan, the NBA, and current, retired, and future NBA players and their families. This conspiracy harms players and their families who rightfully benefit from the Plan. The scheme here has already triggered administrative changes in how the Plan is administered to tighten controls and avoid future fraud. The Court's sentence should make clear to others that the fraudulent use of the Plan, and similar health benefits is serious, unacceptable, and should not be attempted.

Notwithstanding the above aggravating considerations, the Government acknowledges that there are mitigating considerations in the defendant's case. The Government notes the defendant accepted responsibility relatively early in this matter. Indeed, he left a foreign country to surrender in this District. The Government also notes that in terms of relative culpability, the defendant had one of the lower attempted loss amounts ($118,000), which is more than three other co-defendants.

Hon. Valerie E. Caproni
October 13, 2022
Page 5 of 5

For those reasons, and particularly the relatively early acceptance of responsibility, the Government believes a sentence toward the bottom of the Guidelines Range is appropriate.

### III.     Conclusion

      For the reasons set forth above, the Government respectfully requests that the Court impose a sentence toward the bottom of the Guidelines Range.

                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney

                     by: _/s/_____
                          Ryan B. Finkel
                          Daniel G. Nessim
                          Assistant United States Attorneys
                          (212) 637-6612/-2486